UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | File No. 20-CR-242 (SRN/BRT) |
| Plaintiff, | |
| v. | ORDER |
| **David Scott Nelson,** | |
| Defendant. | |

Bradley M. Endicott, United States Attorney's Office, 316 N. Robert St., Ste. 404, St. Paul MN 55101, for the Government

James R. Behrenbrinker, Behrenbrinker Law Firm, 412 S. 4th St., Ste. 1050, Minneapolis, MN 55415, for Defendant

SUSAN RICHARD NELSON, United States District Judge

    This matter is before the Court on Defendant's Objections [Doc. No. 72] to Magistrate Judge Becky R. Thorson's August 11, 2021 Report and Recommendation ("R&R") [Doc. No. 71]. In the R&R, Magistrate Judge Thorson recommended that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Motion to Suppress") [Doc. No. 17] be denied.

    For the reasons set forth below, the Court overrules Defendant's Objections, adopts the R&R, and denies Defendant's Motion to Suppress.

    **I.    BACKGROUND**

    The factual background of this case is more fully set forth in the R&R, which the Court incorporates by reference. (R&R at 1–4.) In brief, Defendant David Scott Nelson is charged

in a single-count indictment with the unlawful possession of ammunition by an Armed Career Criminal.  (Indictment [Doc. No. 13] at 1–2.)  He moves to suppress evidence obtained from the search of an apartment on Euclid Avenue in St. Paul, Minnesota, conducted pursuant to a search warrant.  (Def.'s Supp'l Mem. [Doc. No. 69] at 1.)   Nelson contends that law enforcement authorities requesting the warrant omitted material information from a supporting affidavit in order to mislead the issuing judge or in reckless disregard of whether the omissions would mislead the judge.  (*Id*. at 8–11.)

   A.  **Information in the Search Warrant Affidavit**

ATF Special Agent Scott Gleason, who is assigned to the ATF's St. Paul Field Office, drafted the warrant application and supporting affidavit at issue.  (Gov't Hr'g Ex. 1 (Euclid Warrant Aff.) at 00000170–88).)  In the affidavit, he noted his past experience investigating offenses such as the unlawful possession of firearms and firearms and ammunition trafficking.  (*Id*. at 00000170.)

Special Agent Gleason first observed that Minnesota Department Corrections ("DOC") investigators routinely monitor telephone calls placed by inmates.  (*Id*. at 0000173.)  Between July and August 2020, a DOC investigator took notes of calls between DOC inmates and a specified telephone number ("the Target Telephone").  (*Id*. at 00000173–75.)  The cellular telephone carrier T-Mobile serviced the Target Telephone number, which was assigned to David Nelson.  (*Id*. at 0000174.)  DOC investigators provided ATF investigators with their call notes from four initial calls to Nelson between July 19, 2020 and August 19, 2020.  (*Id*.)  In general, Nelson and the DOC inmates discussed firearms possession and drug trafficking.  For example, in calls placed on July 19, 2020 and August 18, 2020, a person

2

identified as Nelson referred to his possession of a "5.56 M4 AR," two "major bangs" that "make[] an AR look like a baby," and a ".762." (*Id*.) In reference to the .762, Nelson stated, "That goes through both sides of the door, it ain't for playing around. My hands are hurting right now, carrying those. Those are heavy, I have 3 loads, 3 clips and the[y're] still warm." (*Id.*) Special Agent Gleason explained in his affidavit that he is familiar with the terms "AR" and "AK," which commonly refer to a style of rifles available in 5.56 and 7.62 caliber. (*Id*.) He also enumerated Nelson's prior criminal convictions, which he believed made Nelson ineligible to possess firearms and ammunition. (*Id.* at 0000072–73.)

Special Agent Gleason also quoted the DOC investigator's notes from an August 19, 2020 phone call involving Nelson, an inmate, and an unknown male, as follows:

> **Nelson**: What's up with Face?
> Unknown: I ain't talking to him in two months.
> **Nelson**: I don't know what he's doing. He came [to] see me one time.
> Unknown: Ya, I talked to him after, but what kind of money is he talking about[?]
> **Nelson**: I don't know. I can't talk on this bitch ass phone.
> Unknown: I believe for whatever price[] could be right.
> **Nelson**: They're going for seven for the whole one.
> Unknown: I can do that. What is today, Wednesday? I can have Odie do that by Friday.
> **Nelson**: Get my number from Odie, ya hit me up tho.

(*Id*. at 00000174–75.) Special Agent Gleason stated that the term "whole one" is often used by narcotics traffickers to refer to a whole pound of methamphetamine, and he believed that "seven" referred to the value of the narcotics, i.e., $7,000. (*Id*.)

3

Based on the information acquired from the DOC-monitored phone calls, on September 3, 2020, ATF Special Agent Laura Gulick obtained a search warrant for cell site location information regarding Nelson's cell phone.[1]  (*Id*. at 00000175.)  Pursuant to that warrant, between August 25, 2020 and September 22, 2020, officers conducted physical surveillance on Nelson's movements and activities by "pinging" his cell phone.[2]  (*Id*.)  Special Agent Gleason stated in his affidavit that during their surveillance, investigators "determined that Nelson was living at the residence at XXX Euclid Avenue, St. Paul, Minnesota."  (*Id*.)  He further noted that Nelson parked a BMW 750 automobile in the rear of the residence.  (*Id*.)

With respect to the location information obtained from the cell phone tracking warrant, Special Agent Gleason specifically stated:

> A review of NELSON's cell site location information between 09/14/2020 and 09/20/2020, [] revealed that NELSON spent a significant amount of time at XXX Euclid Ave., St. Paul, Minnesota.  Over these six (6) days, there were "pings" of NELSON's cell site location every fifteen (15) minutes.  Forty-seven (47) of these pings were at the XXX Euclid Ave. address.  In addition, the majority of these pings were between 12:00 a.m. and 5:00 a.m., indicating he is sleeping at this address.  Through my training and experience as well as the physical surveillance conducted, it is my belief that NELSON is utilizing this address on Euclid Ave. as his primary residence.

(*Id*. at 00000175–76.)[3]

---

[1]  Nelson does not appear to challenge the cell phone tracking warrant.

[2]  "Cell phone pinging" is an investigative technique by which a cell phone signal or "ping" is used to determine the cell phone's GPS location or its proximity to the nearest cell phone tower.  *See United States v. Caraballo*, 963 F. Supp. 2d 341, 346 (D. Vt. 2013); "Ping," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ping (last accessed Oct. 5, 2021).

[3]  Special Agent Gleason later testified that officers observed Nelson in the Euclid area at other times during this six-day period, although his affidavit does not refer to them,

The search warrant affidavit further notes that on September 10, 2020, a DOC investigator provided Special Agent Gleason with additional call notes involving a call between Nelson and an inmate that had occurred two days earlier. (Gov't Hr'g Ex. 1 (Euclid Warrant Aff.) at 00000179.) The notes reflect that in that conversation, Nelson reported that he had recently shot his BMW 750 "a couple of times" while seated in the passenger seat, apparently aiming outside the car. (*Id*.) He stated on the call that even though "[his] window was rolled down all the way, [he] still shot it." (*Id.*) On September 11, 2020, after Special Agent Gleason located Nelson's vehicle at XXXX Old Cedar Avenue South in Bloomington, Minnesota, he observed and photographed two bullet holes in the area of the rear passenger window. (*Id*. at 00000180.)

A few weeks later on September 21, 2020, DOC call notes summarizing a call between Nelson and an inmate reflect that Nelson was discussing the sale of narcotics and taking part in a robbery. (*Id*. at 00000181.)

On September 22, 2020, an officer conducting surveillance at the Euclid Avenue residence observed Nelson exit the rear of the building, enter a car registered to Nelson's known girlfriend, and return to the residence. (*Id.* at 00000176.) The Euclid Avenue address was also the address that Nelson's girlfriend had registered with the Minnesota Department of Vehicle Services. (*Id*. at 00000176–78.)

---

other than on September 22, 2020. (Hr'g Tr. [Doc. No. 67] at 96–97, 99–101.) Nor could he identify any investigative reports that might corroborate these additional surveillance observations of Nelson at Euclid Avenue between September 16 and 22. (*Id*.)

5

In the search warrant affidavit, Special Agent Gleason also referred to his experience in drug and firearms investigations, stating,

> Based on my training and experience in conducting criminal investigation of violations of federal drugs, firearms and ammunition laws, I know that it is common for persons who are involved in the unlawful possession of drugs and/or firearms and/or ammunition to store those items at their residences, in their vehicles and/or conceal them on their person. It is common for persons who are involved in the illegal possession, distribution and sale of drugs and/or firearms and/or ammunition to engage in such activity from their residence and/or vehicle, attempting to conceal their dealings from detection by law enforcement.

(*Id*. at 00000171–72.) Special Agent Gleason therefore requested a search warrant authorizing the search of the Euclid Avenue residence for firearms, ammunition, drugs, U.S. currency, indicia of occupancy, and related items. (*Id*. at 00000171, 00000187–88.)

After obtaining authorization from U.S. Magistrate Judge Kate M. Menendez for the search, (*id*. at 00000162), officers executed the warrant on September 29, 2020, and seized various rounds of ammunition. (R&R at 4.) A federal grand jury indicted Nelson in October 2027 with one count of unlawful possession of ammunition. (Indictment at 1–2.)

**B. Motion to Suppress**

In his Motion to Suppress, Nelson contends that Special Agent Gleason deliberately omitted material information from his affidavit in order to mislead the issuing magistrate judge or in reckless disregard of whether the omissions would mislead the magistrate judge. (Def.'s Supp'l Mem. at 8–11.) He asserts the following arguments in support of his position: (1) the DOC call notes "fail to provide a nexus with the Euclid Avenue address"; (2) although ATF determined that Nelson is prohibited from possessing firearms and ammunition, his prior convictions do not provide a nexus between the Euclid Avenue address and firearms,

6

ammunition, and drug distribution; (3) the cell site location information for the period between September 16 and September 20, 2020 shows that Nelson spent significantly more time elsewhere than at the Euclid Avenue address; and (4) "surveillance of [Nelson] established that there were at least two and perhaps up to five residences that could have been his primary or permanent residence," including residences in Woodbury, Inver Grove Heights, and on Western Avenue and Galtier Street in St. Paul. (*Id.* at 13–24.)

Relying on *Franks v. Delaware*, 438 U.S. 154 (1978), Nelson argues that because the affidavit lacked material information, there was insufficient probable cause to support the warrant for the search of the Euclid Avenue residence, and therefore the evidence seized as a result of the search must be suppressed. (*Id.* at 24.) In an earlier motion, Nelson also requested a *Franks* hearing to consider whether the search warrant affidavit contained material misstatements or omissions [Doc. No. 47]. Magistrate Judge Thorson granted his request, and held a *Franks* hearing on June 2, 2021. [Doc. Nos. 59, 64]. Special Agent Gleason testified at the hearing, (Hr'g Tr. [Doc. No. 67] at 37–128), and the Court admitted Defendant's Exhibits 1–4, and the Government's Exhibit 1. (June 2, 2021 Ex. List [Doc. No. 65].)

In the R&R, Magistrate Judge Thorson found that at the time Special Agent Gleason drafted his affidavit, he did not make false statements or recklessly disregard the truth by stating that the Euclid Avenue address was Defendant's primary residence or a place where he was living. (R&R at 8.) Nor did the magistrate judge find it was reckless for Special Agent Gleason to omit information regarding other locations that investigators originally had considered as Nelson's possible residences, as they had ruled out those locations by the time

7

Special Agent Gleason drafted his affidavit. (*Id*. at 8–9.) Magistrate Judge Thorson therefore concluded that there was no *Franks* violation. (*Id*. at 9.) Having found the warrant to be facially valid, she then conducted a four-corners review and found that the affidavit established sufficient probable cause for the issuance of the warrant. (*Id*. at 9–13.) Finally, the magistrate judge determined that even if probable cause did not exist, the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), applied. (R&R at 13–14.) Accordingly, Magistrate Judge Thorson recommended that Defendant's Motion to Suppress be denied. (*Id*.)

## II.   DISCUSSION

The district court reviews the magistrate judge's recommendations on dispositive matters de novo, undertaking an independent analysis of those portions of the R&R to which a party objects. 28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).

### A.   No *Franks* Violation

Nelson objects to the magistrate judge's finding that there was no *Franks* violation. (Def.'s Objs. at 3–15.) In order to obtain relief on his *Franks* challenge, Nelson must show: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Miller*, __ F.4th __, No. 20-2857, 2021 WL 4022666, at *5 (8th Cir. Sept. 3, 2021).

In support of Nelson's argument that Special Agent Gleason either intentionally or recklessly misled the issuing magistrate judge by omitting material facts, he points to the following: (1) Special Agent Gleason "understood he needed to declare *as fact* there was a

8

fair probability that guns, ammunition, and drugs would be found inside the Euclid address"; (2) neither the DOC call notes nor Nelson's prior convictions provide a nexus between unlawful gun or drug activity and the Euclid address; (3) cell site location evidence shows that Nelson spent significantly more time at places other than the Euclid address; and (4) physical surveillance and ping data establish that at least three addresses could have been Nelson's primary residence. (Def.'s Objs. at 6–15.) If the omitted information had been included and the misleading information set aside, Nelson contends that the remaining content of the affidavit would have been insufficient to support a finding of probable cause. (*Id*. at 14–15.)

The Court disagrees. As the magistrate judge observed, a showing of deliberate or reckless disregard sufficient to support a *Franks* violation "is not lightly met." (R&R at 7) (quoting *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010)). It is true that Nelson submitted evidence connecting him with at least two, and perhaps up to five, potential residences, (Def.'s Hr'g Exs. 2, 3, 4), and the cell phone pings referenced in the search warrant affidavit represented only a portion of the total pings during the period prior to the application for the Euclid Avenue warrant. (*See* Hr'g Tr. at 104–08, 119.) But the magistrate judge found that Special Agent Gleason testified credibly to his belief, based on "the totality of the entire investigation," that Nelson was living and sleeping at the Euclid Avenue address. (*Id*. at 101.) Agent Gleason explained that throughout the surveillance and investigation period, Nelson was at the Euclid Avenue address or in the immediate area "an overwhelming majority of the time." (*Id.* at 51; *see also id.* at 56, 122.) Because most of the Euclid Avenue phone pings

9

occurred between 12:00 a.m. and 5:00 a.m., Special Agent Gleason reasonably believed that Nelson was sleeping at that location in light of "normal human behavior." (*Id*. at 122–23.)

Special Agent Gleason acknowledged at the *Franks* hearing that Nelson frequented two other addresses—one on Bailey Road in Woodbury, and the other on 56th Street in Inver Grove Heights—but based on phone pings and physical surveillance, "it was apparent to [investigators]" that Nelson "was not residing at any other address" than the Euclid Avenue residence. (*Id*. at 45–46, 49, 50–51, 61, 77–78, 86.) Officers observed Nelson at the Woodbury residence only "every once in a while," and at the Inver Grove Heights residence only once. (*Id*. at 49, 50.) With respect to two other addresses on Western Avenue and Galtier Street in St. Paul, Special Agent Gleason testified that investigators never saw Nelson or his vehicle at either location. (*Id*. at 47, 61, 81, 83–85.) Moreover, based on his training and experience, Special Agent Gleason testified that it is common for people engaged in criminal activities to attempt to avoid detection by residing at addresses other than those found on government-issued identification. (*Id*. at 49.)

Based on the above testimony, the Court finds that Special Agent Gleason did not intentionally or recklessly make false statements or omissions in his search warrant affidavit. Rather, based on surveillance and ping data, he reasonably characterized the Euclid Avenue address as Nelson's primary residence. (Gov't Hr'g Ex. 1 (Euclid Warrant Aff.) at 00000176.)

Not only is there no showing here that Special Agent Gleason intentionally omitted facts in order to mislead the magistrate judge, even if the affidavit had contained all of the information about the other potential addresses, including the ping data, and whether Nelson

was observed at each of the locations, the affidavit would still have been supported by probable cause. *Miller*, 2021 WL 4022666, at *6 ("The proper course is to consider the affidavit as if the omissions had been included.")  As noted above, investigators had physically observed Nelson at the Euclid Avenue address.  Ping data placed him there on multiple occasions, including between the hours of 12:00 and 5:00 a.m., when one would expect him to be sleeping at his primary residence.  In contrast, Nelson either seldom or never visited the other addresses in question.  Had all of this information been included in Special Agent Gleason's affidavit, it would have lent additional, comparative support to the determination that Nelson primarily resided at the Euclid Avenue residence.  Accordingly, the Court finds that there was no *Franks* violation here, and Defendant's objections are overruled in this regard.

### B. Probable Cause and Good-Faith Exception

While Nelson's Objections focus on the alleged *Franks* violation, to the extent he also objects to the magistrate judge's finding of probable cause and, in the absence of probable cause, the application of the good-faith exception, the Court briefly addresses these issues.

Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *United States. v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000).  When the issuing judge relies solely upon a supporting affidavit to issue the search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014). Judges issuing search warrants may "draw reasonable inferences from the totality of the

circumstances" when reading a warrant application to determine whether probable cause exists. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009). Reviewing courts afford "great deference" to the issuing judge's "initial, on-the-scene determination that probable cause has been established." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010). As long as the issuing judge had a "substantial basis" for determining that the search would "uncover evidence of wrongdoing," the Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

As to whether the search warrant affidavit established a sufficient nexus between the place to be searched and the illegal items to be seized, *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016), the affidavit linked Nelson to suspected narcotics and drug activity through the DOC call records, and linked Nelson to the Euclid Avenue address through surveillance and cell phone pings. It was reasonable for officers to conclude that Nelson was living at the Euclid address, particularly because they observed him there, and cell phone pings frequently placed him at that location, including during typical sleeping hours. Moreover, in the affidavit, Special Agent Gleason stated that persons involved in illegal narcotics or firearms activity often store those items at their residences. (Gov't Hr'g Ex. 1 (Euclid Warrant Aff.) at 00000171–72.) Because the warrant established probable cause that Nelson unlawfully possessed firearms, probable cause existed to search his residence, as "people generally keep [firearms] at home or on their persons." *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011).

Moreover, even if probable cause did not exist, the good-faith exception to the exclusionary rule would apply here. Although evidence obtained in violation of the Fourth

Amendment must generally be excluded, if officers obtained the evidence pursuant to a warrant and reasonably relied on the issuing judge's probable cause determination, the disputed evidence will be admitted.  *Leon*, 468 U.S. at 906; *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) (internal citation omitted).  "[T]he fact that a neutral [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in objective good faith."  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation omitted).  There is no evidence here to suggest that the officers' reliance on the warrant was unreasonable or not in good faith.  Accordingly, even if probable cause was lacking with respect to the search warrant affidavit, the evidence is admissible under the good-faith exception to the exclusionary rule.  Defendant's Motion to Suppress is therefore denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 17] is **DENIED**.

2. The Report & Recommendation [Doc. No. 71] is **ADOPTED**.

3. Defendant's Objections [Doc. No. 72] to the Report & Recommendation are **OVERRULED**.

Dated: October 6, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge